**NEW YORK LIFE INSURANCE**
**COMPANY,**

          **Plaintiff,**

**vs.**
                              **Case No.: 8:07-cv-401-T-27TGW**

**ZELDA J. WAXENBERG, et al.,**

          **Defendant.**
_____/

## ORDER

**BEFORE THE COURT** are: (1) Defendant Zelda Waxenberg Family Trust's Verified

Motion for Attorney's Fees and Costs Pursuant to Section 768.79 (Dkt. 71) and (2) Defendant Zelda

Waxenberg Family Trust's Verified Motion for Fees and Expenses (Dkt. 72). Defendant Burton W.

Wiand, the Receiver, and his counsel have filed a response in opposition to both motions. (Dkt. 81).

Both parties have filed supplemental authority. (Dkts. 90, 91). The Court held a hearing on the

motions on February 20, 2009. (Dkt. 105). Upon consideration, Defendant's motion for fees and

costs pursuant to Fla. Stat. § 768.79 is GRANTED, and the motion for fees and expenses pursuant

to 28 U.S.C. § 1927 is DENIED.

### *Background*

The Defendants, Burton W. Wiand, as Receiver for Howard Waxenberg Trading, LLC, HKW

Trading LLC, HKW Trading Fund I LLC, Downing & Associates Technical Analysis, and the Estate

of Howard Waxenberg ("the Receiver") and Zelda Waxenberg, as Trustee of the Zelda Waxenberg

Family Trust are parties in two separate actions before this Court. A brief history of these cases as

1

well as the original Securities and Exchange Commission enforcement action appointing the Receiver follows.

On June 9, 2005, the Securities and Exchange Commission ("SEC") filed an enforcement action against Howard Waxenberg Trading, LLC, HKW Trading LLC, HKW Trading Fund I LLC, Downing & Associates Technical Analysis, and the Estate of Howard Waxenberg. (Case No. 8:05-cv-1076-T-24TBM, Dkt. 1). The SEC alleged that Howard Waxenberg operated a Ponzi scheme between 1990 and 2005, involving approximately 200 hundred investors. (*Id.*, ¶¶1- 2). Shortly before that action was filed, Mr. Waxenberg committed suicide. (*Id.*, ¶ 9).

In the course of the enforcement action, the Honorable Susan C. Bucklew appointed Burton W. Wiand as the Receiver over Howard Waxenberg Trading, LLC, HKW Trading LLC, HKW Trading Fund I LLC, Downing & Associates Technical Analysis, and the Estate of Howard Waxenberg (collectively, "the Receivership Entities") (Case No. 05-cv-1076, Dkts. 10, 44). The Appointing Order authorized the Receiver to take possession of the Receivership Entities' assets and to:

> institute such actions and legal proceedings, for the benefit and on behalf of the [Receivership Entities] and their investors and other creditors, as the Receiver deems necessary against those individuals, corporations, partnerships, associations and/or unincorporated organizations, which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred monies or other proceeds directly or indirectly traceable from investors in the [Receivership Entities]. (Case No. 05-cv-1076, Dkt. 10 at 2-3).

The Receiver ultimately initiated eighty-five ancillary actions against investors, seeking to recover payments made by Mr. Waxenberg to those investors. The Receiver sought to distribute recovered funds pro rata among all investors.

The first action of these ancillary actions, Case No. 8:05-cv-1856-T-27TBM, was

2

commenced on October 5, 2005 against Mr. Waxenberg's wife, Zelda Waxenberg ("Mrs. Waxenberg"). (Case No. 05-cv-1856, Dkt. 2). The Receiver later added Mrs. Waxenberg in her capacity as Trustee of the Zelda Waxenberg Family Trust ("the Trust"). (Case No. 05-cv-1856, Dkt. 20). The Second Amended Complaint brought claims pursuant to Florida's Uniform Fraudulent Transfer Act (Counts I, III, and V) and for unjust enrichment (Counts II, IV, and VI) to recover funds transferred to Mrs. Waxenberg and the Trust.[1] (Case No. 05-cv-1856, Dkt. 65).

The instant interpleader action was filed on March 5, 2007 by Plaintiff New York Life Insurance Company ("New York Life"), pursuant to Rule 22 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1335, against the Trust and the Receiver. (Dkt. 1). New York Life alleged that both Defendants asserted competing claims to two life insurance policies issued to Mr. Waxenberg, totaling over $1 million. (Comp. ¶¶ 7, 10-11). With leave of Court, New York Life deposited $1,062,538.42 in the Court's registry. (Dkts. 13, 15). New York Life was discharged on August 28, 2007. (Dkt. 36).

On May 8, 2007, the Receiver filed an Amended Answer and Amended Cross-claim against the Trust. (Dkt. 23). The Receiver alleged that premiums for the life insurance policies "were paid with funds belonging to or wrongfully taken from one or more of the Receivership Entities ... giving the Receiver an interest in the NYL policies." (Dkt. 23 at 13, ¶ 56). The Receiver sought a declaratory judgment declaring his interest in the policies and awarding the proceeds of the policies in proportion to that interest. (Dkt. 23 at 13). On May 25, 2007, the Trust filed a motion to dismiss

---

[1] Specifically, the Receiver sought to recover three types of transfers: (1) "return of principal" in the amount of $921,500.00, which represents Mrs. Waxenberg's principal investment with Mr. Waxenberg that he returned to her in 2003 and 2004; (2) "false profits" in the amount of $150,167.82, which represents Mrs. Waxenberg's purported earnings on her principal investment; and (3) "other transfers" in the amount of $799,784.05, which were not made in connection with Mrs. Waxenberg's investment, but were purportedly for the Waxenbergs' household and family expenses. (Case No. 05-cv-1856, Dkt. 65).

the amended cross-claim, which the Receiver opposed. (Dkts. 28, 35).

On September 20, 2007, the Trust served an offer of judgment of $51,000.00 on the Receiver to settle all claims in the interpleader action, pursuant to Florida's offer of judgment statute, Fla. Stat. § 768.79. (Dkt. 71, Exh. B). The Receiver did not accept the offer. On January 31, 2008, the Receiver filed a notice of voluntary dismissal without prejudice of the amended cross-claim. (Dkt. 56). On April 8, 2008, this Court entered judgment in favor of Mrs. Waxenberg as Trustee and ordered the funds in the registry, and interested accrued thereon, to be distributed to the Trust. (Dkts. 69, 70).

The Trust has filed two motions for attorney's fees and expenses. In the first, brought pursuant to Fla. Stat. § 768.79, the Trust argues that because judgment was entered against the Receiver after it served a good faith offer of judgment, the Trust is entitled to attorney's fees and costs incurred from the date of the offer. In the second motion, the Trust seeks attorney's fees and costs against the Receiver's counsel pursuant to 28 U.S.C. § 1927, alleging that counsel has pursued this case vexatiously and in bad faith. The Receiver and the Receiver's counsel dispute the Trust's entitlement to fees and costs under both provisions. As set forth below, the motion pursuant to Fla. Stat. § 768.79 is granted, and the motion pursuant to 28 U.S.C. § 1927 is denied.

### *Discussion*

### *A.    Fla. Stat. § 768.79*

The Trust first moves for attorney's fees and costs pursuant to Florida's offer of judgment statute, which provides in relevant part:

> In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred . . . from the date of filing of the offer if the judgment is one of no liability or the judgment

4

> obtained by the plaintiff is at least 25 percent less than such offer.
> Fla. Stat. § 768.79(1).

Because judgment awarding the balance of the policy proceeds to the Trust was entered against the Receiver, after the Trust made a $51,000.00 offer of judgment, the statute is applicable on the facts. In the response in opposition, however, the Receiver raises several legal arguments that he contends preclude application of the statute: (1) Fla. Stat. § 768.79 does not apply to this federal case; (2) Judge Bucklew has already prohibited the recovery of fees against the Receiver; (3) the Receiver could not have accepted the offer of judgment without approval by Judge Bucklew; and (4) the Receiver possesses judicial immunity. These arguments are addressed, and rejected, in turn.

First, the Receiver challenges the application of § 768.79 to this federal interpleader action, arguing that it is a federal question case because it is ancillary to the SEC enforcement action pending before Judge Bucklew (Case No. 05-cv-1076). The Receiver provides no authority supporting the application of this principle to the Receiver's *defense* of an interpleader action filed under Rule 22 and 28 U.S.C. § 1335. Rather, subject matter jurisdiction over the interpleader action is based on diversity jurisdiction, and the Receiver's cross-claim was filed pursuant to Fed. R. Civ. P. 13(g).[2] *See Travelers Ins. Co. v. First Nat'l Bank of Shreveport*, 675 F.2d 633, 638 n.9 (5th Cir. 1982) (Rule 22 interpleader is premised on diversity jurisdiction); *Williams v. McFerrin*, 242 F.2d 53, 55 (5th Cir. 1957) (28 U.S.C. § 1335 comes within diversity jurisdiction and forum state's substantive law applies).

---

[2] The Receiver's amended cross-claim did not specifically invoke a theory of liability. (Dkt. 23 at 13). The Receiver argues that it was a federal cause of action under the Declaratory Judgment Act, 28 U.S.C. § 2201. (Dkt. 35 at 8). It is well-established that the Declaratory Judgment Act does not provide an independent basis for federal question jurisdiction. *First Fed. Sav. and Loan Ass'n of Lake Worth v. Brown*, 707 F.2d 1217, 1220 (11th Cir. 1983).

Accordingly, the substantive law of the forum state applies. *Id.*; *Wachovia Bank, N.A. v. Tien*, 534 F. Supp. 2d 1267, 1284 (S.D. Fla. 2007). Florida's offer of judgment statute is considered "substantive" law and therefore governs in this case. *See Menchise v. Akerman Senterfitt*, 532 F.3d 1146, 1150 (11th Cir. 2008); *Jones v. United Space Alliance, L.L.C.*, 494 F.3d 1306, 1309-10 (11th Cir. 2007). Further, the Eleventh Circuit has determined that Fla. Stat. § 768.79 is not preempted by the federal offer of judgment statute, Fed. R. Civ. P. 68. *Menchise*, 532 F.3d at 1152-53.

The Receiver next argues that the Trust is prohibited from seeking fees against the receivership estate -- and by extension, the Receiver -- because Judge Bucklew previously denied this request in the SEC enforcement action. Specifically, on March 13, 2007, the Trust moved for relief from the Appointing Order in two respects: (1) to allow the Trust to assert claims against the Receiver and Receivership Entities in the interpleader action; and (2) to allow the Trust to assert, when timely, "any contingent claims against the Receiver and the Receivership Entities in the interpleader action." (Case No. 05-cv-1076, Dkt. 112 at 4). The Trust specified in the motion that those claims included "intentional tort claims and claims for costs and attorneys' fees against the Receiver in the Interpleader Action." (Case No. 05-cv-1076, Dkt. 112 at 3, ¶ 9). Judge Bucklew granted the motion "as to the Trust's right to assert a claim to the life insurance proceeds" but the motion was "otherwise DENIED" without explanation. (Case No. 05-cv-1076, Dkt. 139 at 1).

The Receiver construes Judge Bucklew's order far too broadly. The order did not address the availability of the offer of judgment procedure to the parties in this action or specifically, the applicability of §768.79. The Trust's offer of judgment was not served until more than two months after that order. It therefore could not have been a "contingent claim" for attorneys' fees when the Trust filed its motion for relief from the Appointing Order. The instant motion for fees is a result of

the Receiver's rejection of the offer of judgment, not an original "claim" for attorneys' fees. The Trust's entitlement to fees is a statutory consequence of the Receiver's conduct in initiating litigation against the Trust, rejecting a reasonable offer of judgment, and then dismissing its claim.

More significantly, Judge Bucklew's order cannot be read to preclude application of Florida substantive law in this action. This Court acknowledges that "the important principle of comity between federal courts is advanced where courts of coordinate rank are respectful of each other's orders, as well as careful to avoid hindering each other's proceedings." *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985). Notwithstanding, this Court cannot ignore applicable law in adjudicating matters which come before it. More specifically, this Court has a responsibility to apply the substantive law of Florida as it pertains to the Receiver's rejection of the Trust's offer of judgment, notwithstanding Judge Bucklew's order.

The purpose of § 768.79 is to encourage settlement of lawsuits, and "[a]n award of fees under the statute is a sanction against a party who refuses to accept a reasonable offer and unnecessarily continues the litigation." *Attorneys' Title Ins. Fund, Inc. v. Gorka*, 989 So. 2d 1210, 1213 (Fla. 2d DCA 2008); *Sarkis v. Allstate Ins. Co.,* 863 So. 2d 210, 222 (Fla.2003). Here, the Receiver rejected what turns out to have been a *very* reasonable offer of judgment. The Receiver's rejection of that offer of judgment necessarily multiplied the litigation. Section § 768.79 clearly applies, and Judge Bucklew's Appointing Order does not preclude application of this statute particularly where, as here, the application of § 768.79 results from conduct of the Receiver.[3] Under

---

[3] The Trust is not "prosecuting" an action against the Receiver, nor is it seeking to recover for "loss or damage," but is merely defending the Receiver's cross-claim in accordance with applicable substantive law. (Case No. 05-cv-1076, Dkt. 10, ¶¶ 15, 22). To the extent that enforcement of a judgment in this case would "disturb[] the assets or proceeds of the receivership," comity is not implicated, as Judge Bucklew will have ultimate authority over the enforcement of any judgment rendered in this case.

7

these circumstances, the Court perceives no threat to comity.

The Receiver makes another, related argument, contending that pursuant to the Appointing Order in the SEC enforcement action, he would have been unable to accept an offer of judgment without the approval of Judge Bucklew and therefore cannot be held liable for not accepting the offer. This argument is unpersuasive. This situation is analogous to the Florida statutes that require court approval of settlements involving minors. *See, e.g.*, Fla. Stat. §§ 768.25, 744.387(3)(a). In those cases, the Florida courts have held that the necessity of court approval of a settlement does not preclude ordinary operation of the offer of judgment statute. *Thompson v. Hodson*, 825 So. 2d 941, 950 (Fla. 1st DCA 2002); *Bodek v. Gulliver Acad., Inc.*, 702 So. 2d 1331, 1333 (Fla. 3d DCA 1997) (superseded by rule on other grounds). Consistent with the foregoing, the Court finds that the offer of judgment statute is applicable in this case, and that the Receiver could have accept the Trust's offer of judgment, subject to approval of Judge Bucklew.

Finally, the Receiver argues that he enjoys immunity for all acts taken in his authority and capacity as receiver. It is well-established that court-appointed receivers "enjoy judicial immunity for acts within the scope of their authority, and that their authority extends to carrying out faithfully and carefully the orders of the appointing judge." *Prop. Mgm't & Invs., Inc. v. Lewis*, 752 F.2d 599, 602 (11th Cir. 1985). As a result, and as the cases cited by the Receiver suggest, constitutional and tort claims relating to execution of court orders, typically involving a receiver's seizure of property, are routinely dismissed based on absolute immunity.[4] The Receiver provides no authority, however,

---

[4] *See, e.g.*, *Prop. Mgm't & Invs., Inc.*, 752 F.2d at 602 (plaintiff alleged that receiver released defamatory news reports and embezzled its assets); *Davis v. Bayless*, 70 F.3d 367, 372 (5th Cir. 1995) (plaintiffs claimed deprivation of due process and numerous state law torts in connection with search and seizure); *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1299 (9th Cir. 1989) (plaintiffs alleged receiver misappropriated and depleted their assets and charged excessive fees); *Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno*, 547 F.2d 1, 2 (1st Cir. 1976) (plaintiff alleged that receiver engaged in conspiracy to put corporation in receivership to avoid

8

indicating that judicial immunity suspends the application of substantive law in suits *initiated* by a receiver. Put another way, the Receiver may not engage in sanctionable conduct, or avoid the consequences of sanctionable conduct, merely because he is acting under the authority of the court. *See Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976) (noting that Receiver must *carefully* and faithfully carry out orders of appointing judge).

Based on the foregoing, the Court finds that the Trust's motion pursuant to Fla. Stat. § 768.79 is due to be GRANTED, and the Trust is entitled to fees incurred since the offer of judgment was served.

## B. 28 U.S.C. § 1927

The Trust also moves for sanctions against the Receiver's counsel pursuant to 28 U.S.C. § 1927. This statute provides that any attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. In order to warrant sanctions under this section, Defendants must demonstrate that: (1) the Receiver's counsel engaged in "unreasonable and vexatious conduct;" (2) the conduct "multiplie[d] the proceedings," and (3) the dollar amount of the sanction bears a "financial nexus to the excess proceedings." *Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1262 (11th Cir. 2007). An attorney's conduct is sufficient to meet the first prong "only when the attorney's conduct is so egregious that it is tantamount to bad faith." *Id.* Negligent conduct will not suffice; the attorney must "knowingly or recklessly pursue a frivolous claim." *Id.*

---

paying debt); *Bradford Audio Corp. v. Pious*, 392 F.2d 67, 70 (2d Cir. 1968) (plaintiff alleged receiver's seizure of funds violated due process).

Claims predicated on outrageous, scandalous, and slanderous allegations, or based on false and unsupported allegations are frivolous. *Beard v. Annis,* 730 F.2d 741, 745 (11th Cir.1984); *Footman v. Cheung,* 139 F. App'x 144, 146 (11th Cir.2005). "If particularly egregious, the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith." *Barnes v. Dalton,* 158 F.3d 1212, 1214 (11th Cir. 1998) (finding bad faith where attorney adduced no evidence to support pattern and practice discrimination claim).

In the instant motion, the Trust essentially contends that the Receiver: (1) made unsupported factual allegations that the policies' premiums were paid with Receivership Entities' funds; (2) pursued a claim with no legal basis for all of the life insurance proceeds rather than for the premiums allegedly paid with the Receivership Entities' funds or, at most, a percentage of the proceeds corresponding to the percentage of premiums allegedly paid; and (3) had an improper purpose in litigating this case to exert leverage in Case No. 05-cv-1856. As discussed, the Trust has not demonstrated that counsel's conduct meets the high threshold required for imposition of sanctions pursuant to § 1927.

*1. Factual allegations*

The amended cross-claim alleged: "Upon information and belief, premiums for the NYL policies were paid with funds belonging to or wrongfully taken from one or more of the Receivership Entities, as shown in Exhibits A, B and C, giving the Receiver an interest in the NYL policies and in the death benefit." (Dkt. 23 at 13, ¶ 56). The Trust argues that the Receiver had no evidence at the time of filing his claim, or now, that money that Mrs. Waxenberg and her father used to pay the policies' premiums is traceable to money they received from the Receivership Entities.

Specifically, the Trust first argues that the Receiver knew that the "vast majority" of

10

insurance premium payments were made by Mrs. Waxenberg's father, Morris I. Steiman, between 1982 and 2000, and that Mr. Waxenberg only made transfers to Steiman between February 1991 and March 1994, prior to the existence of any Receivership Entity for which the Receiver has standing to sue.[5] Moreover, the Receiver's expert testified that he had no documentation linking these payments to payments on the insurance policies. (Oscher Dep. at 167). Second, while the Trust made nine premium payments on the policies between 2000 and 2004, totaling $37.000.00, the Trust argues that the commingling of funds made it impossible for the Receiver to demonstrate whether the payments to accounts controlled by Mrs. Waxenberg were made with Mr. Waxenberg's own legitimate funds or funds belonging to the Receivership Entities.

In response, the Receiver maintains that there was evidence that Steiman received $85,000 from DATA between 1991 and 1994, which was deposited into his bank account ending in 0678 ("Account 0678"). (Dkt. 82, Morello Dec. ¶ 16, Exh. 8; Oscher Dep. at 167). The Receiver contends that "at least some of the payments" to New York Life were made from Account 0678. (Morello Dec. ¶ 15, Exh. 7). The Receiver also maintains that there is evidence that over $1,300,000.00 of the Receivership Entities' money was transferred to a bank account ending in 2687, which was controlled by Mrs. Waxenberg ("Account 2687"). (Morello Dec. ¶ 9). Exhibit A to the amended cross-claim lists the date of each transfer and the Receivership Entity that made each transfer. In addition, there is evidence that Mrs. Waxenberg or the Trust wrote the checks for policy premiums from Account 2687. (Morello Dec. ¶ 11).

---

[5] The transfers to Steiman were made by Downing & Associates Technical Analysis ("DATA"). The Trust argues that because the Receiver does not have standing to raise claims on behalf of DATA, he would not be able to recover on premiums paid during this time period. However, this Court did not dismiss with prejudice claims on behalf of DATA in Case No. 05-cv-1856 until March 26, 2008, after the Receiver voluntarily dismissed his amended cross-claim. (Dkt. 88 at 3).

Accordingly, the Receiver has demonstrated factual support for his allegations that some of the premiums -- those paid between 1991 and 2004 -- were arguably paid with funds that were commingled with legitimate funds. Under the law relied on by the Receiver, the evidence of dates and entities making transfer is arguably sufficient to meet his burden of "tracing" the ill-gotten funds into the policies. These cases require only that the party seeking to impose a lien or constructive trust on life insurance proceeds demonstrate that: the funds were ill-gotten, the funds were deposited into an account, and this same account was used to make payments on the policies. The burden then shifts to the beneficiary to demonstrate that the premiums were paid with legitimate funds. *See, e.g., Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 444-45 (Tex. Ct. App. 2006) (citing *Marineau v. Gen. Am. Life Ins. Co.*, 898 S.W.2d 397, 400 (Tex. Ct. App. 1996)); *Lackey v. Lackey*, 691 So. 2d 990, 993 (Miss. 1997). Similarly, the Eleventh Circuit has held that in bankruptcy "proper tracing does not require dollar-for-dollar accounting;" rather, "equity will follow a fund through any number of transmutations, and preserve it for the owner as long as it can be identified. *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 708-09 (11th Cir. 2005).

Based on these authorities, it cannot be said that the Receiver's cross-claim rests on false, frivolous, or unsupported factual allegations.

2.     *Legal basis*

The Trust also argues that the Receiver had no legal basis for pursuing the life insurance proceeds for two reasons: (1) Fla. Stat. § 222.13 exempts life insurance proceeds from the claims of creditors; and (2) the Receiver could only recover the amount of premiums paid with transferred funds, rather than the entire policy values or a pro rata share of the policies.

The first argument is without merit. Fla. Stat. § 222.13 provides that life insurance "shall

12

inure exclusively to the benefit of the person for whose use and benefit such insurance is designated in the policy, and the proceeds thereof shall be exempt from the claims of creditors." Fla. Stat. § 222.131(1). Notwithstanding the application of § 222.13, the Florida Supreme Court has specifically allowed the recovery of life insurance policies paid with fraudulently transferred funds. *See Bd. of Pub. Instruction for Bay County v. Mathis*, 181 So. 147, 149 (Fla. 1938). Other jurisdictions have noted that similar statutes do not apply to life insurance policies paid for with fraudulently transferred funds. *See Marineau*, 898 S.W.2d at 401 n. 1 (surveying cases). The Receiver therefore had a non-frivolous argument that § 222.13 did not preclude recovery of the life insurance proceeds.[6]

The Trust's second argument presents a closer question. In *Mathis*, a 1938 Florida Supreme Court opinion, the Board of Public Instruction for Bay County was permitted to impose a constructive trust on life insurance proceeds "to the extent of the amount of such premiums so paid" with stolen funds. *Mathis*, 181 So. at 149. The Trust argues that this case stands for the proposition that the Receiver may only recover the amount of the premiums actually paid with stolen funds and that his pursuit of anything more was vexatious.

By contrast, the Receiver maintains that Florida law is not clear that recovery is limited to the premiums paid with stolen funds. The Receiver instead relies on precedent from a wide range of jurisdictions finding that a pro rata share is recoverable,[7] which is the majority view. *See*

---

[6] While the Trust argues that these cases are limited to when a wrongdoer himself pays the premiums, whereas in this case the wrongdoer is alleged to have given money to third parties to pay the policies, the Court does not find this distinction renders the Receiver's claim frivolous under the facts of this case.

[7] *Tex. Life Ins. Co. v. Morgan*, No. 3-86-0846, 1987 WL 44392, at *2, *3 n.7 (N.D. Tex. Oct. 19, 1987) (in interpleader action, holding that if plaintiff could recover pro rata share, even if in excess of amount taken); *Marineau*, 898 S.W.2d at 403 (allowing pro rata share, but limiting recovery to the total amount embezzled); *see also G&M Motor Co.*, 567 P.2d 80, 84 (Okl. 1977); *Brown v. N.Y. Life Ins. Co.*, 152 F.2d 246, 250 (9th Cir. 1945); *Vorlander v. Keyes*, 1 F.2d 67, 70 (8th Cir. 1924); *Truelsch v. Nw. Mut. Life Ins. Co.*, 202 N.W. 352, 361 (Wis. 1925); *Baxter House, Inc. v. Rosen*, 27 A.D.2d 258, 262 (N.Y. App. Div. 1967).

13

*Succession of Onorato*, 51 So. 2d 804, 812-13 (La.1951) (discussing majority and minority views on this issue). Given that the Florida Supreme Court decided this issue in 1938, before the majority view clearly emerged, the Court finds that the Receiver could reasonably argue for an extension of the holding, particularly because *Mathis* did not expressly preclude recovery of a pro rata share.

Even to the extent the Receiver could recover a pro rata share, however, it is undisputed that the Receiver's counsel knew that portions of the policy were paid with funds not belonging to the Receivership Entities. For instance, the evidence indicates that those premiums paid by Steiman between 1982 and 1990 were made before he ever received funds from Mr. Waxenberg. As a result, at most, the Receiver was only entitled to pursue a portion of the policy proceeds, rather than the entire proceeds.

The Court notes that both before and after this case was filed, the Receiver did not specify the amount of proceeds he was seeking and refused to consent to the release of a portion of the funds to the Trust. (Dkt. 72, Exh. A-1 - A-43). Specifically, in correspondence with New York Life and counsel for the Trust, in the twenty months before the lawsuit was filed, the Receiver consistently requested the "proceeds" of the policies and, at one point, requested that "no funds" be released to Mrs. Waxenberg. (Dkt. 72, Exh. A-2, A-9, A-18, A-19, A-22, A-23, A-27, A-29, A-31, A-34). In answers to interrogatories, the Receiver "reserve[d] the right to urge the Court to apply other methods of calculation, including but not limited to awarding the Receiver the entirety of the policy proceeds." (Dkt. 72, Exh. B-2 at 2). On the other hand, the Receiver pled only that he was seeking an "interest" in the policies. (Dkt. 23 at 13, ¶¶ 56, 59).

Importantly, however, it was ultimately New York Life's decision to implead the entire policy proceeds, rather than a portion of the proceeds. The Trust cites no authority indicating that

14

New York Life had an option or obligation to implead less than the entirety of the policies' proceeds. *See* 28 U.S.C. § 1335 (requiring the plaintiff to pay the "value of such instrument" into the registry of the court). Indeed, courts have interpreted the statutory language to require deposit of the entire sum at issue. *See Austin v. Texas-Ohio Gas Co.*, 218 F.2d 739, 745 (5th Cir. 1955) ("When claims for a sum of money only are involved, payment of the entire sum (or giving of a bond) is a condition precedent to the court's jurisdiction. But when claims for specific property are involved, the statute imposes the condition of depositing only the specific property in plaintiff's possession"); *accord Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1159 (5th Cir. 1976); *Allstate Ins. Co. v. McNeill*, 382 F.2d 84, 87 (4th Cir. 1967) ("It is doubtful that the statute intends a severance of the moneys due under a single policy or other sole instrument").

In summary, the Receiver had a supported legal claim, at a minimum, to the premiums paid with allegedly fraudulently transferred funds. The Receiver had a basis on which to argue for an extension of Florida law to recover a pro rata amount of the policies in proportion to the premiums paid with allegedly fraudulently transferred funds. Based on the foregoing, the Court finds that the Receiver's pursuit of the cross-claim against the Trust was not unreasonable or vexatious.

*3. Other bad faith*

The Trust also argues that the Receiver's counsel exhibited bad faith by making duplicative claims in this action and Case No. 05-cv-1856 based on the same transfers, refusing to allow a portion of the insurance proceeds to be placed into escrow, singling out the Trust for a claim against life insurance proceeds, engaging in vexatious discovery, and filing this case with an improper motive to exert leverage in Case No. 05-cv-1856.

As discussed, the Receiver had a non-frivolous factual and legal basis for his claim. The

claim was not duplicative to Case No. 05-cv-1856 because it rested on a constructive trust theory. *Mathis*, 181 So. at 149. As the Receiver had an arguable basis for entitlement to at most a pro rata share of the policy proceeds, the Receiver had no duty to abandon his claim and allow the policy proceeds to be put in escrow. To the extent the Receiver "singled out" the Trust, he nonetheless had a non-frivolous claim. The Court will not sanction the Receiver based on his purported failure to pursue similar claims against other investors.

The Trust specifically challenges the Receiver's response to two interrogatories.[8] In Interrogatory No. 5, the Trust asked the Receiver to identify the interest in the policies claimed by the Receiver. The Receiver's answer indicated that he was seeking a pro rata share of the policies, which was not unreasonable, as discussed above. The Receiver's statement in the amended answer to Interrogatory No. 5 that he reserved the right to "urge" the Court to award "the entirety of the proceeds or the cash value of the policies as of an appropriate date on the basis the coverage was preserved and maintained by premiums paid with funds belonging to the Receivership Entities" is a sufficiently specific response, and does not amount to "absolute gibberish" as the Trust asserts. (Dkt. 72, Exhs. B-2 at 2-3; B-3).

In Interrogatory No. 4, the Trust asked the Receiver to identify each transfer of funds that supported the allegation that life insurance premiums were paid with funds belonging to the Receivership Entities. The Trust contends that the Receiver improperly identified every transfer from all Receivership Entities to Mrs. Waxenberg and Steiman. (Dkt. 72, Exh. B-1 at 10-19). As discussed, however, the Receiver had an arguable basis to trace these transfers to payments on the

---

[8] The Trust's general allegation that the Receiver's counsel exhibited "obstructive and improper" conduct during the Receiver's deposition is not specific enough to permit this Court, or opposing counsel, to evaluate specific portions of the deposition transcript for sanctionable conduct. (Dkt. 72 at 13 & n.31).

premiums. Based on the foregoing, the Court does not find that the Receiver's answers to the interrogatories were in bad faith pursuant to 28 U.S.C. § 1927. *Cf. Footman*, 139 F. App'x at 146 (finding bad faith where interrogatory answers were contradicted by pleadings); *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1334 (S.D. Fla. 2007) (finding bad faith where attorney failed to investigate client's incomplete and false answers); *Malautea v. Suzuki Motor Corp.*, 148 F.R.D. 362, 374 (S.D.Ga.1991) (finding bad faith where attorneys participated in cover up of discoverable material).

Finally, the Trust argues that the Receiver had an overall improper motive in this case to control the life insurance proceeds to ensure settlement in Case No. 05-cv-1856, to deprive Mrs. Waxenberg of money to defend Case No. 05-cv-1856, and to cause Mrs. Waxenberg to incur unnecessary expenses and suffer additional financial pressure. An attorney's subjective intent "is frequently an important piece of the calculus, because a given act is more likely to fall outside the bounds of acceptable conduct and therefore be unreasonable and vexatious if it is done with a malicious purpose or intent." *Hudson*, 499 F.3d at 1262 (internal quotations and brackets removed). Although the Receiver may have pursued this case in part to add leverage to his claims in Case No. 05-cv-1856, the underlying claim had arguable merit. This Court therefore cannot conclude that the pursuit of this action multiplied the proceedings unreasonably and vexatiously. *See Boler v. Space Gateway Support Co. LLC*, 290 F. Supp. 2d 1272, 1285 (M.D. Fla. 2003); *Hudson*, 499 F.3d at 1266.

### *Conclusion*

Upon consideration, it is **ORDERED AND ADJUDGED**:

1)    Defendant Zelda Waxenberg Family Trust's Verified Motion for Attorney's Fees and Costs Pursuant to Section 768.79 (Dkt. 71) is **GRANTED**. Within ten (10) days of the date of this

Order, the Trust shall file a motion for approval of fees and costs, including itemized fees and costs

from September 20, 2007, evidence as to a reasonable hourly rate, and discussion of the relevant

factors supporting an award of fees and costs.[9]  Within ten (10) days thereafter, the Receiver shall

file an appropriate response.

2)   Defendant Zelda Waxenberg Family Trust's Verified Motion for Fees and Expenses

(Dkt. 72) is **DENIED**.

**DONE AND ORDERED** in chambers this 11th day of March, 2009.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record

---

[9] In addition to the statutory factors in Fla. Stat. § 768.79(7)(b), the courts consider the traditional *Johnson* factors. *See* Fla. Stat. § 768.79(6)(a); *Sarkis v. Allstate Ins. Co.*, 863 So. 2d 210, 215 (Fla. 2003); *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 n.5 (Fla. 1985) (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)).