UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NEW YORK LIFE INSURANCE
COMPANY,

    Plaintiff,

vs.              CASE NO.: 8:07-CV-401-T-27TGW

ZELDA J. WAXENBERG, et al.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Defendant Zelda Waxenberg Family Trust's Motion for Approval of Fees and Costs and Interest (Dkt. 107), to which Defendant Burton W. Wiand, as Receiver, opposes (Dkt. 112). Argument of counsel was considered during the December 17, 2009 hearing. During the hearing, the Receiver confirmed that an evidentiary hearing is unnecessary.[1]

### *Background*

This interpleader action was filed by New York Life Insurance Company ("New York Life") against Zelda J. Waxenberg, as Trustee on behalf of the Zelda J. Waxenberg Family Trust ("the Trust") and Burton W. Wiand, as Receiver ("the Receiver") for various entities operated by Mrs. Waxenberg's husband, Howard Waxenberg, before his suicide. (Dkt. 1). New York Life alleged that both Defendants asserted competing claims to two life insurance policies issued to Mr. Waxenberg, with benefits exceeding $1 million. (Comp. ¶¶ 7, 10-11). With leave of Court, New

---

[1] In support of the fee request, the Trust filed the affidavit of a disinterested attorney, Joseph H. Varner (Dkt. 107-5). The Receiver did not file a counter affidavit.

1

York Life deposited $1,062,538.42 in the Court's registry. (Dkts. 13, 15). New York Life was discharged on August 28, 2007 and awarded its fees and costs. (Dkt. 36).

On May 8, 2007, the Receiver filed an Amended Answer and Amended Cross-claim against the Trust. (Dkt. 23). On September 20, 2007, the Trust served an offer of judgment of $51,000.00 on the Receiver to settle all claims in the interpleader action, pursuant to Florida's offer of judgment statute, Fla. Stat. § 768.79. (Dkt. 71, Exh. B). The Receiver did not accept the offer. On January 31, 2008, the Receiver filed a notice of voluntary dismissal without prejudice of the amended cross-claim. (Dkt. 56). On April 8, 2008, this Court entered judgment in favor of Mrs. Waxenberg as Trustee and ordered the funds in the registry, and interested accrued, be distributed to the Trust. (Dkts. 69, 70).

On March 11, 2009, the Trust's motion for attorneys' fees and expenses was granted pursuant to Florida's offer of judgment statute.[2] As a result, the Trust is entitled to attorneys' fees and costs incurred from September 20, 2007, the date of the offer of judgment (Dkt. 106). In the instant motion for approval of fees, the Trust seeks $390,480.50 in attorneys' fees, $52,366.51 in costs, prejudgment interest on the insurance proceeds in the amount of $77,922.24, and reimbursement of the attorneys' fees paid to New York Life in the amount of $11,649.50.[3]

---

[2] "In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred . . . from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer." Fla. Stat. § 768.79(1).

[3] During argument, Mr. Titus represented that the invoices attached to his affidavit were the actual invoices which had been paid by his client, and that he had reduced the hours in the invoices before submission to the client.

*Standard*

Pursuant to Fla. Stat. § 768.79, when the judgment obtained by a plaintiff is at least twenty-five percent less than the amount of an offer of judgment, "the defendant shall be awarded reasonable costs, including investigative expenses, and attorney's fees, calculated in accordance with the guidelines promulgated by the Supreme Court, incurred from the date the offer was served." Fla. Stat. § 768.79(6)(a). In determining a reasonable fee, Florida courts employ the traditional lodestar methodology. *See Sarkis v. Allstate Ins. Co.*, 863 So. 2d 210, 215 (Fla. 2003); *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 n.5 (Fla. 1985) (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974)). To determine the lodestar, the reasonable hourly rate is multiplied by the amount of hours reasonably expended on the litigation. *Fla. Patient's Comp. Fund*, 472 So. 2d at 1150-51. In making this determination, the Court considers the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 n.2 (11th Cir. 2008); *see also Fla. Patient's Comp. Fund*, 472 So. 2d at 1150 n.5 (citing *Johnson,* 488 F.2d at 717-19). After determining the lodestar, it may be adjusted upward or downward to account for the results of the particular litigation. *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988); *Fla. Patient's Comp. Fund*, 472 So. 2d at 1151.

The Florida offer of judgment statute also specifies additional factors to be considered, including: (1) the then-existing apparent merit or lack of merit of the claim; (2) the number and nature of offers made by the parties; (3) the closeness of questions of fact and law at issue; (4) whether the party making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of the offer; (5) whether the suit was a test case presenting questions of far-reaching importance affecting non-parties; and (6) the cost of the additional delay that the party making the offer reasonably would be expected to incur if the litigation should be prolonged. Fla. Stat. § 768.79(7)(b). These factors are not exclusive and must be considered with other relevant criteria. *Sarkis*, 863 So.2d at 213.

### A. Attorneys' Fees

*1. Reasonable hourly rate*

First, the reasonable hourly rate is determined, which "is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299; *Fla. Patient's Comp. Fund*, 472 So. 2d at 1151. The Trust bears the burden of establishing that the requested rates are in line with prevailing market rates. *Id*.

The Trust submits an hourly rate of $375.00 for attorney Titus, $275.00 for attorney Vaughan, and $55.00 for legal assistant Swoboda. Mr. Titus has practiced continuously since 1977 and is experienced in civil and criminal litigation in federal and state court. (Dkt. 107, Exh. C, Titus Aff. ¶¶ 4-7). Ms. Vaughan has nineteen years' experience in civil and criminal litigation (*Id*. ¶ 8), and Ms. Swoboda has twenty-eight years' experience as a legal assistant. (*Id*. ¶ 9). Further, the Trust submits the affidavit of Joseph H. Varner, III, Esq., former litigation practice area leader at

Holland & Knight in Tampa, Florida, averring that these rates reflect an hourly rate charged in Hillsborough County for attorneys and legal assistants of reasonably comparable skill, experience, and reputation. (Dkt. 107, Exh. D., Varner Aff. ¶ 8).

The Receiver does not object to these rates, and the Court finds that they are reasonable based on the "experience, reputation, and ability" of Mr. Titus, Ms. Vaughan, and Ms. Swoboda.

*2.    Hours reasonably expended*

The Court next determines the number of hours which were reasonably expended. "Excessive, redundant or otherwise unnecessary" hours are excluded. *Norman*, 836 F.2d at 1301. In this case, the Trust claims 1139.7 attorney hours and 27.1 hours of legal assistant time from September 20, 2007. (Titus Aff. ¶ 18). The total time expended is therefore 1168.8 hours. (*Id*.) As discussed, the Court finds that the hours claimed for certain tasks are in part excessive, redundant, and unnecessary.[4] Accordingly, the fees are reduced by an across the board percentage where appropriate, consistent with *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).[5]

*a.    Motions for sanctions*

As an initial matter, the fees incurred in litigating the amount of fees to which the Trust is entitled are not recoverable. *McMahan v. Toto*, 311 F.3d 1077, 1086 (11th Cir. 2002) (applying §

---

[4] That is not to say that the Court finds that any of the hours invoiced were not actually spent or that counsel's time was not, in their estimation, necessary to achieve the results they obtained on behalf of their client. Counsel enjoys an impeccable reputation as an ethical and conscientious lawyer, as the Receiver's counsel confirmed during argument. The question, for purposes of taxing fees and costs against the Receiver, is what time was reasonable and necessary, when the responsibility for those fees is shifted to the opposing party.

[5] The fee records are voluminous. Further, counsel utilized a block billing format, rendering it difficult to conduct an hour by hour review of the services rendered. *See ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (proponent of fees has burden of providing time records setting out with sufficient particularity the general subject matter of the time expenditures so that time claimed for each activity can be assessed). In those instances where the time records do not contain sufficient detail, the court may consider its own knowledge and experience in determining a reasonable fee. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

768.79); *Oruga Corp., Inc. v. AT &T Wireless of Fla., Inc.*, 712 So. 2d 1141, 1145 (Fla. 3d DCA 1998). Counsel billed 45.95 hours between March 12, 2009 and March 20, 2009, relating to the filing of the instant motion. The fee award is therefore reduced by **$15,456.25**.

The Receiver also argues that the Trust should not recover for time spent preparing its motion for sanctions pursuant to 28 U.S.C. § 1927, as the motion was ultimately unsuccessful. As demonstrated by this Court's March 11, 2009 Order, the Trust's § 1927 motion required a thorough analysis of the relevant issues. (Dkt. 106 at 9-17). The Receiver provides no authority justifying a *per se* reduction in fees merely because the motion was not granted. The Receiver does, however, correctly argue that the time spent preparing this motion, as well as the motion for fees pursuant to § 768.79, is unreasonable.

The drafting of these two motions appears as the primary task in block-billing entries totaling 171 hours, totaling a claimed fee of $61,647.50. These hours roughly equate to 38 hours per month between December, 2007 and the end of April, 2008. As the Receiver points out, time was billed for on at least 54 different days between 2007 and 2009 (Dkt. 112, p. 5, n. 2). Those time entries include internal conferences, conferences with the attorney's fee expert, analysis of information, analyzing and researching the possibility of a hearing, drafting supporting papers, and considering a reply brief. These entries do not reflect *necessary* services. Several of these entries reflect excessive time spent on non-productive activities. The Court finds that 171 hours spent drafting these motions is excessive and that some reduction in the time sought is appropriate. An across the board reduction is therefore appropriate.

During argument, counsel acknowledged that the time spent preparing and reviewing the motions was considerable, although he maintained that the time was necessary. Counsel's time

entries relating to these motions began in December, 2007. The motions were filed four months later, on April 22, 2008 (Dkts. 71, 72). During the interim, the Receiver dismissed his claim (Dkt. 56), the Receiver's Cross-claim was dismissed (Dkt. 59) and the Trust's summary judgment motion was granted, effectively resolving the case (Dkts. 69, 70).

In part because the Trust's motion for fees pursuant to § 1927 was unsuccessful, and in part because 171 hours exceeds what the Court considers would have been reasonable and necessary for the preparation of these motions, a 25% reduction is appropriate, or **$15,411.88**.

The Receiver argues that the time spent preparing for the hearing on the motions for sanctions is also unreasonable (Dkt. 112, p. 12). The Court agrees. Between January 27, 2009 and February 20, 2009, counsel spent an astounding 195.4 hours preparing for and attending the February 20, 2009 hearing, for a total of $64,850.00 in fees. When questioned, counsel explained that this time would necessarily have included review and research of the Receiver's opposition to effectively counter the Receiver's opposition during the hearing. While this explanation is logical, as the Receiver pointed out, the Receiver's opposition essentially re-asserted the same issues and arguments the Receiver had advanced all along. Those issues and arguments did not require additional, much less extensive, research and review in preparation for the hearing. Counsel's explanation does not explain the extraordinary number of hours spent preparing for the hearing, which lasted approximately 70 minutes (Dkt. 105). Absent a more compelling explanation for the time expended, the Court finds that 195.4 hours is clearly unreasonable and excessive.[6] Accordingly, this time is reduced by 50%, or **$32,425.00**.

---

[6] Assuming a 40 hour billable work week, 195.4 hours equates roughly to 5 weeks of preparation for the 70 minute hearing, a clearly excessive amount of time.

b.  *Discovery issues*

The Receiver argues that the Trust should not be reimbursed for a motion to compel that was not filed. The Court agrees. As the Trust has not addressed or demonstrated how the hours expended on this task were reasonable, the fee sought is reduced by **$2,700.00**.[7] *Gierlinger v. Gleason*, 160 F.3d 858, 880 (2d Cir. 1998); *Am. Atheists, Inc. v. City of Starke*, 509 F. Supp. 2d 1221, 1227 (M.D. Fla. 2007).

The Receiver also argues that the Trust should not be awarded fees for three motions that were filed but denied. Specifically, on June 23, 2008, the Trust filed a Motion for Leave to Conduct Discovery (Dkt. 84) and a Motion for Financial Information in Court Registry (Dkt. 85), which were denied as premature pending a ruling on the Trust's entitlement to fees. (Dkt. 101). The Court also summarily denied the Trust's June 23, 2008 Motion for Status Conference (Dkts. 86, 101). The Receiver argues that these motions were preceded by unsuccessful and unauthorized discovery attempts, for which the Trust should not be awarded fees. Again, the Court does not find the lack of success on these motions necessarily dispositive. Nor, in this instance, are the approximately 24 hours spent on these tasks unreasonable.

Finally, the Receiver argues that the Trust should not be reimbursed for fees incurred in responding to the Receiver's attempts to obtain discovery and for responding to the Receiver's motion to compel (Dkt. 45).[8] Again, while the time spent related to discovery disputes is not *per se* unnecessary or unreasonable, the Court finds the hours spent on these tasks excessive. Counsel

---

[7] Work pertaining to the motion to compel is listed in several block-billing entries totaling 13 hours. This work does not appear to be the major activity. Accordingly, the Court reduces the award by 30% of these hours as well as the 4.5 hours billed by Ms. Vaughan on November 15, 2007, for a total of 8.4 hours. (Dkt. 107-3 at 16-17).

[8] The Receiver dismissed the cross-claim before the Magistrate Judge ruled on the motion to compel.

apparently billed at least 130 hours between November 2007 and January 2008 on the Receiver's discovery requests, for a total of $45,800.00 in fees.[9] Although the requested discovery involved voluminous financial documentation, counsel has not demonstrated why that much time was necessary to respond to the Receiver's discovery requests. The time entries included non-productive time such as internal conferences and "document review and analysis re supplemental production." Accordingly, these fees are reduced by 25%, or **$11,450.00**.

*c.     Duplicative work*

The Receiver argues that the Trust is not entitled to recover attorneys' fees relating to services that were also relevant to the related case filed by the Receiver against Mrs. Waxenberg (Case No. 8:05-cv-1856). Specifically, the Receiver objects to the full recovery of fees for depositions of Mrs. Waxenberg, Cynthia Porter, and Debbie Goellnitz, all of which were relied on and filed in Case No. 8:05-cv-1856 in connection with Mrs. Waxenberg's motion for summary judgment. (*See* Case No. 8:05-cv-1856, Dkts. 139, 140).

The Trust claims 95.75 hours related to these depositions,[10] for a total fee of $31,006.25. Because the depositions appear to have been of at least equal use in the related case, the award is reduced by half, or **$15,503.13**. *See, e.g., Hall v. Lowder Realty Co., Inc.*, 263 F. Supp. 2d 1352, 1370-71 (M.D. Ala. 2003); *cf. Jean v. Nelson*, 863 F.2d 759, 773 (11th Cir. 1988) (noting that unnecessary duplication of attorneys' efforts is a ground for reducing a fee award).

---

[9] For those block-billing entries for which responding to discovery requests and the motion to compel did not comprise the predominant tasks, the Court attributes 50% of those hours to discovery-related work. (*See, e.g.*, Dkt. 107-3 at 16-29, entries on November 26, 2007, December 17, 18, 19, 27, 2007, January 30, 2008).

[10] As the entry for September 21, 2007 includes substantial other matter, it is reduced by 50%. (Dkt. 107-3 at 6).

Similarly, the Receiver argues that the entries for document review were also useful in the related case. Relevant entries appear in block-billing totaling 53 hours, or $18,512.50 in fees. These requested fees are likewise reduced by half, or **$9,256.25**.

3.  *Lodestar calculation*

The reasonable hourly rate, multiplied by the hours reasonably expended, reduced by **$102,202.51** for the reasons set forth above, yields a lodestar of $288,277.99 for work performed between September 20, 2007 and March 20, 2009. The majority of this time appears to have been spent in discovery, including deposing accounting experts, mediating the case and obtaining the voluntary dismissal, filing a motion to obtain final judgment pursuant to this Court's order, and litigating the Trust's entitlement to fees and costs.

This case presented novel issues regarding fraudulent transfers, as discussed in the March 11, 2009 Order (Dkt. 106). It also involved production, review, and analysis of voluminous and complex financial documentation. (Titus Aff. ¶¶ 26, 27). For instance, Mr. Titus avers that the Receiver and his expert produced 140 banker's boxes of documents and 10 compact discs with thousands of additional documents. (Titus Aff. ¶ 27). As a result, the case called for a high degree of skill, necessitated employment of expert witnesses, and required intensive time and labor to address discovery issues and the underlying substantive claims. In his supporting affidavit, Mr. Varner avers that the hours spent were reasonable. (Varner Aff. ¶ 9).

In addition, Mr. Titus avers that other employment was precluded due to the demands of this case, and that he has not raised hourly rates over the four years he represented Mrs. Waxenberg in this matter and Case No. 8:05-cv-1856. (Titus Aff. ¶ 22). Moreover, although the Receiver placed the entire proceeds of the policies in dispute, counsel for the Trust ultimately obtained a dismissal

with prejudice of the Receiver's cross-claim, payment of the full policy proceeds, and an award of fees and costs.[11]

The Court finds that the § 768.79 factors weigh in favor of awarding the fee without further modification. As set forth in the March 11, 2009 Order, the Receiver had a supported legal claim as to the premiums paid with the allegedly fraudulently transferred funds. (Dkt. 106 at 15). The Trust made a fair offer, which exceeded the amount of payments made by Mrs. Waxenberg on the policies. While the parties dispute whether the Trust furnished all relevant financial records, it appears that the timing and source of the premium payments to New York Life were known to the Receiver, thus enabling him to evaluate the reasonableness of the offer. Nor did this case present questions of "far-reaching importance affecting non-parties." Finally, the Receiver should have expected the Trust to incur significant expenses if the litigation were prolonged given that significant discovery, mediation, and dispositive motions had not yet occurred.

Based on the foregoing, the Court finds that the complexities of this case justify the time and labor expended, except as already reduced by this Court, for a reasonable attorneys' fee of $288,277.99. The Court declines to adjust the amount of this award upward or downward to account for the results of this litigation.

### B. Other costs

The Trust also claims $52,366.51 in other costs. Only taxable costs are recoverable pursuant to § 768.79. *C & S Chems., Inc. v. McDougald*, 754 So. 2d 795, 797 (Fla. 2d DCA 2000). Further, "it is the burden of the moving party to show that all requested costs were reasonably necessary." *In re Amendments to Uniform Guidelines for Taxation of Costs*, 915 So. 2d 612, 616 (Fla. 2005).

---

[11] The Court does not find that the remaining *Johnson* factors -- "undesirability" of the case and time limtiations imposed by the client or the circumstances -- weigh in favor of reducing or increasing the amount.

The Receiver contests the amounts claimed for copying ($3,758.19), electronic research ($3,770.73), long distance telephone ($28.91), facsimile ($1.95), Federal Express ($372.86), postage ($11.07), Pacer ($31.60), and court fees ($3,309.93), totaling $11,285.24, because the Trust has not provided sufficient information demonstrating that these costs were reasonably necessary. The objections are overruled. These litigation expenses are ordinary litigation expenses and for the most part, self explanatory as reasonable and necessary.

The Receiver correctly argues that the amounts charged for the services of accountant Stephen C. Phifer should not be taxed as costs because he is a non-testifying expert. *See Guidelines*, 915 So. 2d at 616 (expenses relating to consulting but non-testifying experts should not be taxed as costs). The costs are therefore reduced by the amount charged by Mr. Phifer between October 25, 2007 and March 19, 2009, in the amount of **$13,531.25**. (Dkt. 107, Exh. B-24-28). Additionally, the Receiver argues that the Trust has not demonstrated that expert Lloyd Morgenstern's time charged with respect to the motions for sanctions was reasonably necessary. The Court agrees, and the costs are further reduced by **$2,645.00.**

Finally, pursuant to the Guidelines, travel expenses for counsel **($4,151.01)** should not be taxed as costs. *Id.*

Based on the foregoing, the claimed costs are reduced by **$20,327.26**. In light of the Florida Supreme Court's stated policy "of reducing the overall costs of litigation and of keeping such costs as low as justice will permit," the Trust provides no justification for a departure from the Guidelines in this case. *Id.*

## C. Prejudgment interest

The Trust also moves for $77,922.24 in prejudgment interest on the funds New York Life interpled.[12] "[A] motion to award prejudgment interest requests a substantive alteration of a court's judgment and must be made pursuant to Rule 59(e)." *Osterneck v. E.T. Barwick Indus., Inc.*, 825 F.2d 1521, 1526 (11th Cir. 1987)[13]; *see also Avatar Dev. Corp. v. DeAngelis*, 944 So. 2d 1107, 1107 (Fla. 4th DCA 2006). The Trust failed to move within ten days of judgment for prejudgment interest against the Receiver. Accordingly, the motion is denied as to the request for prejudgment interest.

## D. Fees to New York Life

Finally, the Trust seeks reimbursement from the Receiver of the attorneys' fees and costs awarded to New York Life and paid from the interpleaded funds to New York Life following its discharge. As a disinterested stakeholder, New York Life was awarded attorneys' fees and costs (Dkt. 36). "The award of costs and attorneys' fees in an interpleader action is generally to be imposed against the party who has benefited from the interpleader action." *Prudential Ins. Co. of America v. Boyd*, 781 F.2d 1494, 1497-98 (11th Cir. 1986) (citing *Prudential-Bache Secs., Inc. v. Tranakos*, 593 F. Supp. 783, 785 (N.D. Ga. 1984)). "The usual practice is to tax the costs and fees [awarded to the stakeholder] against the interpleader fund, *although the court may tax the losing claimant directly when her conduct justifies doing so.*" *Id.* at 1498 (emphasis added).[14]

---

[12] In the instant motion, the Trust claims $94,573.53 in prejudgment interest. (Dkt. 107 at 11). However, the exhibits attached to and cited in the motion indicate an amount of $77,922.24 (Dkt. 107, Exhs. A, F).

[13] Although the Eleventh Circuit has noted a narrow exception when the substantive law mandates an award of prejudgment interest, this exception does not apply here. *Osterneck*, 825 F.2d at 1526 n.8.

[14] *Accord Septembertide Publ'g, B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989) (citing *Prudential Ins. Co. of America v. Boyd*, 781 F.2d 1494, 1497-98 (11th Cir. 1986)); *see also Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Sprague*, 251 F. Appx. 155, 157 (4th Cir. 2007) ("[F]ee awards are generally drawn from the interpleaded fund itself, not from the losing party.").

The issue here is whether the Receiver's conduct in asserting its claim to the policy proceeds warrants the taxation of New York Life's fees and costs against the Receiver.[15] The Court has determined that the Receiver's claim was not unreasonable or vexatious.[16] Accordingly, there is no conduct on the part of the receiver which warrants the taxation of New York Life's fees and costs against the Receiver. The Receiver's rejection of the Trust's offer of judgment was not so unreasonable as to warrant departure from the usual practice of taxing stakeholder costs and fees against the interpleader fund. The motion is therefore denied as to the request for reimbursement of attorneys' fees and costs paid to New York Life.[17]

---

[15] In *Boyd*, the Eleventh Circuit held that it was an abuse of discretion to tax stakeholder fees and costs against the losing claimant because the decision was based on an unsupported finding of bad faith. *Boyd*, 781 F.2d at 1498. In *Tranakos,* the district court taxed stakeholder fees on the United States as an unsuccessful claimant, which had "unreasonably" persisted in efforts to enforce a tax levy against financial accounts after receiving information that, if examined, would have demonstrated that the target of the levy was not the beneficial owner of the funds. 593 F. Supp. at 786-87. Accordingly, the taxation of the interpleader plaintiff's fees and costs against a losing claimant are warranted only where some conduct on the part of the losing claimant warrants it. *See also Septembertide Publ'g*, 884 F.2d 675 at 683 (imposing stakeholder fees and costs on claimant based on claimant's "unreasonable litigation posture" in opposing deposit of funds and dismissal of stakeholder).

[16] *See* Dkt. 106 at 15.

[17] The Trust's argument that Florida law controls finds some support in the case law. *See Perkins State Bank v. Connolly*, 632 F.2d 1306, 1311 (5th Cir. 1980). However, Florida law would not require a different result. *Stortz v. ERA Metrorealty, Inc.*, 552 So. 2d 1179 (Fla. 1st DCA 1989), on which the Trust relies, determined that the trial court abused its discretion by not granting a motion to compel the losing claimant to reimburse the interpleader fund for the amount paid the disinterested stakeholder because, although the losing claimant eventually agreed to withdraw his claim, "he [was] nonetheless an unsuccessful claimant, whose *unwarranted* claim to a portion of the fund and refusal to allow payment to the [other claimant] in the first instance precipitated this needless litigation." 552 So. 2d at 1181 (emphasis added). The Receiver's claim cannot be said to have been completely unwarranted. As noted, the Court has determined that the Receiver's cross-claim was not unreasonable or vexatious.
    *Lucco v. Treadwell*, 127 So. 2d 461, 463 (Fla. 2d DCA 1961), on which the Trust relies, does conflict with *Boyd*'s description of interpleader practice by stating that "the general practice in interpleader is for the plaintiff to recover his costs and attorney's fees from the fund and, at the termination of the case, for the unsuccessful claimants to reimburse the fund for these expenses." *Lucco*, 127 So. 2d at 463. However, although following what it described as the general practice, *Lucco* relied on case law justifying the taxation of stakeholder fees against the losing claimant on the ground that the fees "ought ultimately to be paid by the party whose claim has been adjudged groundless, and whose assertion of the claim necessitated the interpleader." 127 So. 2d at 463 (quoting *Globe Indem. Co. v. Puget Sound Co.*, 154 F.2d 249, 250 (2d Cir. 1946)); *see also Brown v. Marsh*, 123 So. 762, 764 (Fla. 1929) (dicta) (weight of authority supports the allowance for attorney's to the distinterested stakeholder, "such fee to eventually fall on the defendant who was in the wrong and made the litigation necessary.").
    Here, the Receiver's claim has never been determined to have been groundless. Accordingly, even of Florida law applies, the Court declines to order the Receiver to reimburse attorneys' fees and costs paid from the interpleader fund to New York Life.

*Conclusion*

Based on the foregoing, it is **ORDERED** that Defendant Zelda Waxenberg's Motion for Approval of Fees and Costs and Interest (Dkt. 107) is **GRANTED IN PART** to the extent that the Trust is awarded $288,277.99 in attorneys' fees and $32,039.25 in costs. The motion is otherwise **DENIED**.

**DONE AND ORDERED** in chambers this 29th day of December, 2009.

/s/James D. Whittemore
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record